May it please the Court, my name is Peter Wolfe. I represent the Appellant, Mr. Takahashi. I'm going to try to reserve two minutes for rebuttal. We'll see how that goes. I think that the Fourth Amendment issue that's presented here can be really determined or decided by the application of two principles which are well established. The first is that a warrant that's issued in the absence of a substantial basis for determination of probable cause is invalid. And the subpart of that that's important here is that probable cause needs to be individualized to the target of the warrant. So here we have a lengthy warrant in support of 26 affidavits, but the question is really, was there probable cause to support the issuance of the warrant in this particular case? So we're not really talking about 25 other warrants. We're talking about whether the 26th warrant, which was the warrant for Takahashi's apartment, was based on probable cause. And the second principle is that while a law enforcement officer's opinions and beliefs are entitled to be considered by the district judge, or in this case the magistrate judge, they're not sufficient to establish probable cause. And the reason why that is is that the opinion or belief of the officer has to be factually supported in the affidavit so that the issuing judge can consider whether the officer's opinions or the officer's beliefs are reasonable. And that principle seems to be articulated perhaps best by the Ross case, where the Supreme Court indicated that the good faith belief of an officer, it's not enough to constitute probable cause. What the officer needs to do is ground that good faith or that belief in facts which are within the officer's knowledge so that the court can make a judgment as to whether that belief is reasonable. And so that, I think, is the key aspect of this case. And you can demonstrate that or see it for yourself if you look at that part of this affidavit, which deals with the cause to search Mr. Takahashi's apartment. And so if you look at paragraph 341 of the affidavit, it starts off that they intercept a phone call in June. This is at page 198 of the excerpt of record at the top of the page. So they intercept a phone call in June between Robin Nakamoto, who the officer says is believed to be dating Greg Takahashi. But he never describes why he believes that to be. He never indicates in this conversation that there's any mention of Mr. Takahashi. And, indeed, the affidavit doesn't suggest that there is. He doesn't describe any observation, doesn't say they ever saw Takahashi and Nakamoto together. And then if you go down about eight lines, he adds this. And there's no support whatsoever for this. It says, Nakamoto is apparently aware of her boyfriend, Greg Takahashi's close friendship with Damian Hina. Well, first of all, in ten lines she's going from believed to be dating Takahashi to now he's her boyfriend. And then he describes a belief that she's aware of Takahashi's close friendship with Damian Hina, as to which there's no support whatsoever in the affidavit. Now, it may be, I suppose it's possible, that the officer knew something that would have justified this belief. And if so, he ought to have put it in the affidavit so the magistrate judge could have examined whether the belief is worthy of consideration by the court. Counsel, is it possible that this simply anticipates the conversations that then go on in paragraph 343, subsequently, where Takahashi is with Hina and Mr. Lundgren is calling? I mean, is it possible that 341 is simply sort of a conclusion based on facts that aren't admitted until later on in the affidavit? I don't think so, because there's no basis upon in 342 and later to conclude anything about what Nakamoto was aware of. Why is what Nakamoto is aware of even relevant in light of what's found in the subsequent paragraphs? Why do we even need Nakamoto? I'm a little puzzled as to why this paragraph was even here. Well, I think the reason it's here is because it introduces the concept to the magistrate judge, which is unsupported by the affidavit, that Takahashi has a close friendship with Damian Hina. That's not supported in the earlier affidavit, and it's not supported by what happens in 342, 343, and so on, where all you can determine is that they have some acquaintance and that Hina made a phone call to Takahashi and asked if his friend was there. And so the problem that I'm articulating about 341 continues in 342, because the last sentence of 342 – so he describes this conversation that they pick up on the Title III warrant, and then the last sentence says, Your affiant believes this exchange involved a conversation regarding an illegal drug transaction of significant size between Lundgren and another male known only as Dave, who was in town from San Diego at the time, here and after San Diego Day. There's no support whatsoever for that sentence. Now, I think it would be a fair statement that one might infer that in this phone call between Hina and Lundgren, based not only on what's said in the phone call, but based on what's earlier, the warrant, the Title IIIs have demonstrated about the relationship between Hina and Lundgren, that this conversation between Hina and Lundgren on 8-4 has something to do with a drug transaction. That's a fair inference. But the idea that it has something to do with a drug transaction of significant size or involving San Diego Dave is a concept that is introduced here and that isn't based on any facts whatsoever. And if the officer chooses to deny the court the opportunity to review the reasonableness of the officer's belief by showing what the underlying facts are, then I think the warrant fails. Now, it could have been done right, but it wasn't. And so then you see the same sort of thing in 343. Hina calls Takahashi and asks if his friend is there. And then he jumps to a conclusion that Hina knew where Lundgren was located. Well, I don't think that's justified. And once again... Well, he's not dialing randomly. Right. He's not dialing random cell phone numbers in Honolulu trying to find his friend. He did have a cell phone number and was fairly confident that he was going to find Lundgren in the presence of that cell phone. Well, he asked if his friend... Takahashi's cell phone. Right. He asked if his friend was there, and it turned out he was there. But ultimately, how do you deal with Leon? I mean, that's where you come out. And in your brief, you spend maybe a paragraph. I can understand why you'd be dismissive of it, but I think here you have to tell me a little bit more about why Leon should not apply. Well, there's two principles from Leon that seems to me are relevant here. The first is that Leon doesn't apply when the magistrate judge abandoned his or her judicial function. And we would urge that that occurred, because what the magistrate judge did was simply accept and ratify the agent, Agent O'Malley's opinions and conclusions, in the absence of O'Malley having presented factual support for those opinions and conclusions. The other aspect of it is that when the warrant is lacking in an issue of probable cause as to render official belief in its existence unreasonable, and while such belief might have been reasonable as to the 25 other warrants that were issued, we're not litigating that question, it was unreasonable as to this one, because the principles here are well settled. And the officer ought to know that when all he puts down is his beliefs that in his opinion, and doesn't support them with facts by which they can be checked, then official reliance on that is unreasonable. And so Leon, we think those two exceptions to Leon, rule of Leon, would apply here. Counsel, let me go back. Let's suppose that when the magistrate read this, was the magistrate a she? Yes. A she. When the magistrate read this, and she got to paragraph 341, she said, you know something, where does Nakamoto come from? I don't know why we think that she's his girlfriend. And not only that, let's suppose that she comes to the same conclusion you did. How do we know that Takahashi is a close friend with Damian Hina, as opposed to just a guy that he has some awareness of? But by the time she gets to 343 and 344, she says, you know something, I've now read 199 pages worth of affidavit here, and it's clear that Lundgren and Hina are up to their eyeballs in drugs in Honolulu. And when Hina calls Takahashi and says, I need to speak with Lundgren, or Lundgren calls, I'm sorry, Lundgren calls Takahashi and says, I need to speak with Hina. I think Hina calls and he has to speak to Lundgren. And says, look, I need to come over to your place. And we are aware that other things are going on contemporaneously with this, that the magistrate can say, okay, I don't know anything about Nakamoto, and I don't know whether Takahashi really is a good friend with these guys or not, but it's obvious to me that he's involved with them at a critical time and in a critical place. Now, why can't the magistrate do that without us ever having to get to Leon? Well, in a way, Your Honor, you've ‑‑ Is the magistrate obligated? Your argument under Leon was that these were unreasonable beliefs even for officers, much less for the magistrate, and that the magistrate has completely abandoned her position. Is the magistrate obligated to sort of strike through sentences or strike through things that she says, well, I rely on this, but I don't rely on that? No, what I think the magistrate is obligated to do is to see if there's a factual support for the belief. But to answer your earlier question, or attempt to, it seems to me that to say that in this lengthy investigation, that this particular day in August is both a critical time and a critical place, is itself unsupported by the facts that were presented to the magistrate judge. What we know is there's a lengthy investigation, there's a lengthy affidavit, there is 11 earlier Title III affidavits, none of which mention Takahashi or intercept a phone call or have an informant that mentions Takahashi's name or anything. And then here we are with one day in August where you could conclude that two dope dealers probably met at Takahashi. Takahashi's place for half an hour, and that's all you know. And now in three months after that, the magistrate judge is being asked to authorize a warrant, and I would just suggest that's not enough. And the reason it's not enough, and the reason I would think that the vice of this kind of lengthy affidavit is that, that you read page after page after page of what these dope dealers are doing, and then you forget about the fact that, hey, you know what, nobody has done or said or seen Takahashi or seen his car or confirmed anything or, and even when you go, I mean, to get back to Nakamoto, I know you, I mean, just look at the way he goes from Nakamoto's a bartender at a strip club to the strippers at the strip club are believed to use dope. What does that have to do with anything? I mean, it just shows the kind, to me, it shows the kind of elision from one point to the other without there being a factual support for any of it. And so while O'Malley, Agent O'Malley might be commended for his diligence and certainly for his fortitude in producing an affidavit of this length, as to this particular warrant, I would urge that the Fourth Amendment wasn't complied with, and the district court's judgment ought to be reversed. Thank you, counsel. Thank you. May it please the court. My name is Lou Bracco, and I'm an assistant U.S. attorney in the District of Hawaii, and I'm here to argue this case on behalf of the government. And there's four points I'd like to make. First, I'd like to make one correction to our brief. On page 12 and 16, the brief indicates that in the conversations that the defendant, Takahashi, or the appellant, rather, provided directions to his residence in the phone call with Hina. That's not correct. What the affidavit says in 343, it's Hina and Lundgren, after Hina and Lundgren get on the phone, the affidavit says they joke about where Takahashi lives. And I think that that's important, because Mr. Wolfe, in his reply brief, suggests, well, you know, if Takahashi had to provide directions to his residence, that really shows that Hina might not have been there before or been familiar with the residence. So that's an error in the brief. What the affidavit actually says is that Lundgren and Hina are joking about where Takahashi lives, and I think that's important, because you can draw the opposite inference from that. If they joked about where he lived, they must have known where he lived and probably had been there before, because there was something to joke about. And the other thing I would say about that is in one of the succeeding paragraphs of the affidavit, it explains that that building where Takahashi lived is a controlled access building. In other words, after you get where the ñ and maybe even where the car parks, but you need the key cards to get there. So this is not an area where Hina or Lundgren could have gone by themselves. They would have had to have somebody with a key card, Takahashi, to access that. Another point that I'd like to make is with respect to the good faith argument, and as Judge Block pointed out, there's only two pages, or actually less than two pages in the brief that are dedicated to the good faith argument. And I think that the government has a very strong argument for good faith. Counsel, are you abandoning the idea that you've got probable cause? Oh, no, absolutely not, because I think that you can rely on the opinions of the agent and conclusions. And I think in this case, those opinions are more highly reliable than in many of the cases that are cited in the briefs, where you can say that you rely on the opinions of the agent. And that's because of several factors. Number one, this was a very lengthy investigation. The investigation spanned more than a year. But more importantly than just the length of the investigation was the intensity of the investigation, as Mr. Wolf indicated and as the briefs show, prior to or actually during your time. There is a bit of difference in saying, based on my experience, I think this word is a code for something else, and saying in the passive tense, so-and-so is believed to be a girlfriend, for example. And because that's a fact, not necessarily an opinion, how do you draw the distinction in response to Mr. Wolf's argument? Well, I would say this. I would say that it's a matter of degree, which the magistrate judge has to assess. But where you have an agent such as Agent O'Malley, who's actively engaged over a period of time preceding this for several months in Title III surveillance, and he's listening on a daily basis to all these phone calls and he knows who all the players are, he should be entitled to more, his opinions and conclusions would be more highly reliable than a person, say, in some of these cases that are cited in the briefs. I'm trying to think of an example. But there's a difference in saying, in the passive tense, so-and-so is believed, we don't know by whom, to be a girlfriend, and saying, based on my observation, et cetera, et cetera, over a course of time, I believe that she is the girlfriend because of X. That's right, Your Honor. It may or may not matter, but I think it's of a different character than someone who's saying, based on my experience as a narcotics officer, I think this is a code for that. That's correct. And I think the succeeding paragraphs, after the first paragraph where they talk about the girlfriend, the agent does that, Agent O'Malley does that, and he gives more facts. I would agree with Judge Barber that I don't know really why that's in there about the girlfriend. I don't think it's probably in there just to show association between Hina and the girlfriend. But, Mr. Wolf, Mr. Wolf's point about the girlfriend, I think, is the same objection, that all of a sudden, on page 199 of this affidavit, and we're almost to the end of the affidavit, we've got this new character, San Diego Dave, who sounds like a big fish and big stuff going down, but we don't have any suggestions as to where San Diego Dave is. I mean, it's a new character being introduced at the end of the play. Well, I would have two answers to that. And my first answer would be really, and I'll point it out in the reply brief, where Mr. Wolf concedes, he says, there's no doubt that the affidavit portraying probable cause to believe Hina and Lundgren were conspiring together with others to deal drugs in Hawaii. So he's saying, look, there's no doubt there's a drug organization that includes at least Hina and Lundgren. It's substantial, and it involves drugs. So now the magistrate can tell from the entire affidavit, and Mr. Wolf concedes, there's this drug organization. So now what the magistrate is looking for is, well, I've got to have a substantial basis to find that evidence is going to be at this particular location. And the affidavit goes through and explains that Hina and this other guy, Vesnesky, routinely use other places to hide or secrete their drugs other than their own places. And I think there's four or five that are summarized in the brief where they say, I put money at one house, one was a girlfriend and the other was a father. So now what the magistrate is saying, okay, I see that there's a drug organization, substantial. I also have abundant probable cause to believe that these guys, Hina and Lundgren, stashed their money and drugs at some other places. So now what I'm looking for is a substantial basis to show where they do that. And as O'Malley said, as he tells the magistrate right up front in the affidavit, let's see if I can find it real quick. I don't know if I can find it very quickly. But he's basically saying, look, there's a paragraph in there where he tells the magistrate, we're looking to see, to search, some of the places that we're looking for are residents of associates who are believed to hide and secrete drugs. So now the magistrate knows the substantial organization, knows that Hina and Lundgren or Hina and Busnesky are hiding, knows that they're hiding at associates, so now what he's saying is, okay, is there sufficient information in this affidavit to show that Takahashi is the kind of associate where he would, there's probable cause to believe that he would have drugs or evidence of drug trafficking activity. And that's where the parts of the affidavit of the phone call become very important, because Damian Higa says, Hina says, I'm going to come to town. Lundgren says, we need you in town. And O'Malley concludes, well, there's some drug deal going on at that time from the wiretaps. And then when Hina is coming to town, they end up meeting at Takahashi's apartment, the surveillance confirms. But what does Hina do to find where Lundgren is? He calls Takahashi's cell phone. Now, the sequence is important, because you have Lundgren calling Hina and said, I need you in town, and then within, then Hina's driving to town, and then within, I forget the amount of time, but 40 minutes or so later, when he gets to town and he's looking for Takahashi, looking for Lundgren, who he wants to meet, who says it's important to meet him, who does he call? He calls Takahashi's cell phone. Now, that's probative, because he knows that Lundgren is with Takahashi, because the inference is they're going to meet at Takahashi's apartment. I suspect you're saying that the reference to San Diego Dave is totally irrelevant, that this would stay in the same way. It is irrelevant, because he's another drug dealer. Once you know that Lundgren and Hina are involved in this drug conspiracy, it's a major conspiracy. They would have probable cause, and there's no mention at all in the affidavit of San Diego Dave. You would, because you know there's a drug conspiracy, and he's just another player, and you're not searching San Diego Dave's place. The importance of San Diego Dave really is that it's looking like he's a source and that there's a drug deal that's going down in or about this time, and it doesn't matter if the source is San Diego Dave or some other source, but that's why it's in there to explain the name of the source, basically. The other thing I'd like to make is that in the law of conspiracy, there's a rule that once you show that there's a conspiracy, once you establish that conspiracy, you only need slight evidence to show that another person is a member of the conspiracy. And sort of I conceptualize what's going on like this. Here you have abundant evidence that's a major drug trafficking organization ongoing. You have abundant evidence that Hina and Lundgren are involved in it, that there's some sources that they're having drug transactions, and that you have an experienced agent who's listening in to whatever conversations he can get that are relevant to this conspiracy over these particular phones that they have a wiretap on. So there's no question that this is ongoing drug activity. And then the question is, okay, you also know that they're stashing the evidence of the drugs at several different locations. And the question is, is there a substantial basis based upon this conduct, this meeting that's taking place at Takahashi's place, to show a substantial basis to believe that evidence of the drug trafficking conspiracy would be at that location? And I submit that there's sufficient, that's a substantial basis for the magistrate to make that conclusion. And even if you don't get to good faith, the warrant is good as to Takahashi's residence. But if this court doesn't find that, which I think the court should find that, but if the court doesn't find it, I don't see how you defeat the argument for good faith, because you have an agent who's working hard, who's including all this information in the affidavit, who's relying, presenting it to a neutral magistrate. And there's absolutely no evidence in the record that the magistrate has abandoned her judicial role or has not considered the information in the affidavit. So isn't the agent who makes a 139-page affidavit and does his best to include all the information, isn't he entitled to rely on the warrant once the magistrate reviews the affidavit and then says, okay, I find probable cause? Because if the good faith test doesn't apply here, it really doesn't apply. Thank you, counsel. Thank you. I gave you a little more time, but I gave Mr. Wolf a little time. I'll give you one minute for a bottle, Mr. Wolf, if you want. Both of you have flown over from Honolulu, so I don't want to cut you off. In response to Mr. Bracco's analogy from conspiracy law, I think that whole notion is undercut by the Ibarra case, where the Supreme Court made it pretty clear that the standard is probable cause, and the search or seizure has to be supported by probable cause, particularly with respect to that person. So the whole notion of Pinkerton liability, that takes you once you establish a conspiracy as a matter of trial evidence, or Rule 29 law has really nothing to do with this case. In terms of all the other places that were searched, as to each and every one of them, and I don't have time to list them all, there was something more that was demonstrated as to those other places, whether they be locations or vehicles or other things. There was always something beyond a mere association for approximately, at most, one half hour or so on one particular day, three months before this affidavit was brought to the magistrate judge's attention. There's always something more. And as to this search, there wasn't something more. So I think the proper analysis is what was there about this search that was different, and you will see if you go through this tedious affidavit that there was always something far more in the other cases, and there wasn't here, and that's why we ought to prevail. Thank you. Thank you, counsel. The case just heard will be submitted. We'll proceed to argument on the second case on the calendar.
judges: Thomas, Bybee, Block